UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Chad Lee Monson and
71 Aggregate, Inc.,

Plaintiffs,

vs.

J. Richard Stermer and
Stermer and Sellner Chtd.,

Defendants.

Court File No.: 26-CV-3632

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS IN LIEU OF AN ANSWER**

## INTRODUCTION

Defendants J. Richard Stermer and Stermer and Sellner Chtd. submit this memorandum of law in support of their Motion to Dismiss in Lieu of an Answer. The Complaint asserts five claims against Defendants: breach of fiduciary duty, legal malpractice, "attorney deceit and collusion," fraud on the Court, and intentional infliction of emotional distress. The Complaint must be dismissed per Rule 12(h)(3) and Rule 12(b) of the Federal Rules of Civil Procedure. because it fails to state a claim against Defendants.

**Sloneker Declaration:**[1]

**Ex. 1. Complaint**

**Ex. 2. Stermer Deposition (referenced in Complaint)**

**Ex. 3. Bankruptcy Petition**

[1] Regarding the inclusion of documents from the relevant Bankruptcy Case, "The district court may take judicial notice of public records and may thus consider them on a motion to dismiss." *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003)

**Ex. 4. May 20, 2014 Notice of Bankruptcy/Appointment of Stermer as Trustee**

**Ex. 5. Application for Approval of Employment of Attorney Stermer**

**Ex. 6. 9/1/17 Final Account and Application for Discharge.**

**Ex. 7. 12/19/22 Application to Reopen and Reappoint Trustee**

**Ex. 8. 1/12/23 Order Approving Appointment**

**Ex. 9. 1/17/23 Withdrawal as Trustee**

## FACTUAL BACKGROUND

### I. Relationship Between the Parties and History of the Bankruptcy Proceeding.

Plaintiff Chad Monson initiated a Chapter 7 bankruptcy proceeding on May 19, 2014. U.S. Bankruptcy Court Petition No. 14-42151. (Sloneker Decl. Ex. 3) ("Bankruptcy Case"). Defendant J. Richard Stermer ("Stermer"), a Minnesota-licensed attorney, was appointed as bankruptcy Trustee on the following day. (Sloneker Decl. Ex. 4). Stermer applied for the employment of his firm, Stermer Law Firm, PLLC,[2] in the Bankruptcy Case. (Sloneker Decl. Ex. 5). Stermer, as trustee, and non-party Matthew Burton as attorney for the trustee, filed a Final Account and Application for Discharge on September 1, 2017. Sloneker Aff. Ex. 6. No party objected, and the Bankruptcy Case was administratively closed—and Stermer administratively discharged—on January 8, 2019. *See* U.S. Bankruptcy Court Petition No. 14-42151 January 8, 2019 Docket Entry.

On December 19, 2022, the Acting United States Trustee filed an application and motion to reopen the Bankruptcy Case when the Trustee learned that Plaintiff Monson had

[2] Stermer was the owner and principal of that firm; Defendant Stermer and Sellner Chtd. did not yet exist.

filed a lawsuit, because the property claimed in the lawsuit might have been property of the bankruptcy estate, necessitating the case's reopening. Sloneker Aff. Ex. 7. Stermer, who in 2015 had merged his law firm with Prindle, Maland & Sellner, Chtd. to form Defendant Stermer and Sellner, Chartered, was initially reappointed as trustee on January 12, 2023. Sloneker Aff. Ex. 8. However, upon realizing that Prindle, Maland & Sellner, Chtd., had represented one of Plaintiffs' creditors, Dennis Larson, in an unrelated case prior to the firms' merger (i.e., before Stermer worked at the successor entity of this firm), Stermer withdrew as trustee just a few days after his appointment on January 17, 2023. Sloneker Aff. Ex. 9. A new trustee was appointed, the reopened Bankruptcy Case proceeded to conclusion, and was closed without any further involvement by either Defendant on May 6, 2026.

## II. Allegations In Plaintiffs' Complaint.[3]

Neither Defendant ever represented Plaintiffs in any matter. But Plaintiffs now loosely allege various and unsupported conspiracy theories about Stermer's activities as trustee in the Bankruptcy Case, claiming generally that Stermer conspired with one of Plaintiff Monson's judgment creditors, Dennis Larson, to improperly liquidate Plaintiffs' assets in bankruptcy. First, that Stermer breached his fiduciary duty as a Chapter 7 Trustee in the Bankruptcy Case (ignoring common sense legal principles, such the obvious fact that a bankruptcy trustee owes a duty *to the bankruptcy estate* and not the individual debtor).

---

[3] For the purposes of a motion to dismiss, the Court must construe the factual allegations in the Complaint in the non-movant's favor. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003); *see also Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990). Defendants deny all allegations in the Complaint.

Second, Plaintiffs assert legal malpractice, overlooking the major detail that neither Defendant *ever represented either Plaintiff*. Plaintiffs' third claim, pled as "Attorney Deceit and Collusion," mirrors the preceding two claims, claiming entitlement to treble damages due to contrived malfeasance by a Trustee that Plaintiffs *have no standing to sue*. Fourth, Plaintiffs claim that Defendants committed "fraud on the bankruptcy court" by concealing non-existent conflicts of interest. And finally, Plaintiffs claim that the total of these items caused Monson to "suffer…intense mental suffering, severe emotional distress, extreme humiliation, and prolonged psychological suffering." Sloneker Aff. Ex. 1 at 7.

Plaintiffs attempt to meet the heightened scienter pleading standard by disingenuously misrepresenting a portion of Stermer's deposition testimony in a case between Plaintiff Monson and Dennis Larson. Plaintiffs state the following in the Complaint:

> 8. On February 1, 2023, Defendant Stermer was placed under oath and deposed regarding his handling of the Monson bankruptcy estate. The transcript was suppressed and withheld until August 2026.
>
> 9. Defendant admitted that while he was bound as a bankruptcy trustee, he and his firm were representing Larson.
>
> 10. Defendant Stermer testified "Our firm and me, personally. Yes...I do represent him [Larson] in those matters."

*Id*. at 4. A full copy of Stermer's deposition is provided as Exhibit 2 to the Affidavit of Matthew Sloneker, and reveals the full context of this statement (excluding Plaintiffs' surrounding commentary) is as follows:

CROSS-EXAMINATION

BY MR. ATMORE:

Q First of all, you said -- let's start at the -- where you ended. So you got wind, you said, in twenty twenty ten -- two of the lawsuit we're talking about today, right, that you're testifying in today. Right?

A **I got a call from an attorney telling me about the lawsuit, that he was representing the defendant in the lawsuit.**

Q Okay.

A **Yes.**

Q All right. And then you said you looked into things and referred the matter to the U.S. Trustee's office?

35

A **Correct.**

Q To see --

A **Yes.**

Q -- if they wanted to reopen the bankruptcy. Right?

A **Right.**

Q And during this period of time, when -- when you're getting wind and you're referring --

A **Mm-hmm.**

Q -- your firm represented Dennis Larson. Correct?

A **I -- yes. Our firm and me, personally. Yes.**

Q Yes.

A **Yes.**

Q And MAAC, Inc. Right?

A **Yeah, in totally different -- separate litigation.**

Q But you did represent him? You were --

A **I do.**

Q -- his lawyer?

A **I do represent him. Yes.**

Q And you're his lawyer today?

A **Yes, in those matters.**

Sloneker Aff. Ex. 2. Contrary to Plaintiffs' misrepresentation in the Complaint, the testimony *they* reference shows that Stermer took precautions to avoid even the appearance

of a conflict of interest, and represented Dennis Larson in *other, unrelated* cases and *not* the bankruptcy case.

But while the Court can and should consider Stermer's deposition transcript, which is referenced in a party pleading and can thus be considered without turning this motion into one for summary judgment,[4] the Court need not even reach that issue because the case should be dismissed for failure to state a claim upon which relief can be granted.

## ARGUMENT AND AUTHORITIES

### I. Under The *Barton* Doctrine, Plaintiff Lacks Standing to Bring This Case.

As a threshold matter, Plaintiffs lack standing to sue a bankruptcy trustee, and the case must be dismissed on that ground alone. "Standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit…If a plaintiff lacks standing, a district court has no subject matter jurisdiction." *Breaker v. United States*, 977 F. Supp. 2d 921, 931 (D. Minn. 2013); *citing City of Clarkson Valley v. Mineta,* 495 F.3d 567, 569 (8th Cir. 2007).

Cases against bankruptcy trustees have long been governed by the "Barton Doctrine," first stated in *Barton v. Barbour,* 104 U.S. 126, 26 L.Ed. 672 (1881). The *Barton* court "established that an equity receiver could not be sued without leave of the court that appointed him." *Id.* at 128–29. The *Barton* doctrine remains valid law, as explained by the Eighth Circuit:

---

[4] On a motion to dismiss under Rule 12(b)(6), the court may consider extraneous materials that are outside the complaint if such materials are "necessarily embraced" by the pleadings. *Piper Jaffray v. Nat'l Union Fire Ins. Co.*, 967 F. Supp. 1148, 1152 (D. Minn. 1997) (JRT/RLE).

> [T]he *Barton* doctrine was not dependent on any federal statute, but instead was based on principles of common law….*Barton* has been applied to bankruptcy trustees and *requires that a party obtain leave from the bankruptcy court before bringing an action in another forum against the trustee for acts done in the trustee's official capacity…*
>
> Just like an equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code. If he is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded.

*Alexander v. Hedback*, 718 F.3d 762, 767 (8th Cir. 2013) (emphasis added) (internal citations omitted).

Thus, to sue a bankruptcy trustee (which, as overlooked by Plaintiffs, does not represent the debtor but the estate), a would-be litigant must obtain permission from the Bankruptcy Court presiding over that litigant's bankruptcy proceedings. Neither Plaintiff has done so, and thus lack standing to sue. The Complaint fails on this ground alone.

## II. Defendants Are Entitled To Dismissal Under Rule 12(b)(6).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move for dismissal based on the Complaint's failure to state a claim upon which relief can be granted, prior to filing a responsive pleading:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation….A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement…"

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal,* 556 U.S. 662, 677–78, 173 L. Ed. 2d 868 (2009) (internal citations omitted). "To state a claim upon which relief can be granted, each element of the claim must be pled in the complaint." *Brown v. Simmons*, 478 F.3d 922, 923 (8th Cir. 2007). This standard is heightened in cases alleging fraud or mistake, where "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

**a. Count I: Breach of Fiduciary Duty**

"To prevail on a claim of breach of fiduciary duty, a plaintiff must prove four elements: duty, breach, causation, and damages." *TCI Bus. Cap., Inc. v. Five Star Am. Die Casting, LLC*, 890 N.W.2d 423, 434 (Minn. Ct. App. 2017). Plaintiffs claim that Stermer, as bankruptcy trustee, breached his duty to Plaintiff Monson. Plaintiffs are wrong, because neither Defendant *ever* owed a fiduciary duty to Plaintiffs.

"The trustee's fiduciary duty is to "maximize the value of the estate." *In re Simply Essentials, LLC*, 78 F.4th 1006, 1010 (8th Cir. 2023). "It is the duty of the trustee in bankruptcy to 'collect and reduce to money the property of the estate for which such trustee serves.' 11 U.S.C. § 704(1)." *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007). "The property of the estate includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.' 11 U.S.C. § 541(a)(1)." *Id.* Indeed,

> Simply stated, the trustee owes no fiduciary obligation to the debtor and does not represent the debtor...The trustee in this case is under no obligation to liquidate assets for the benefit of the debtor.
>
> A trustee in bankruptcy represents the interests of the debtor's *estate* and its *creditors,* not the interests of the debtor or the debtor's principals. Moreover, the trustee can settle claims without the debtor's approval so long as they are reasonable.

*In re Nangle*, 288 B.R. 213, 219 (B.A.P. 8th Cir.), *aff'd*, 83 F. App'x 141 (8th Cir. 2003) (internal citations omitted) (emphasis in original).

Plaintiffs fail to plead the very first element of this claim—that a duty existed in the first place—and therefore this claim fails as a matter of law. Even assuming that were not true, the Complaint nonetheless fails to state this claim due to the *Barton* doctrine cited *supra*.

**b. Count II: Legal Malpractice**

To prevail in an action for legal malpractice the plaintiff must show: "(1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; and (4) that but for defendant's conduct, the plaintiff would have been successful in the prosecution or defense of the action." *Ryan Contracting Co. v. O'Neill & Murphy, LLP*, 883 N.W.2d 236, 242 (Minn. 2016).

Like the preceding count, this claim fails at the first element: no attorney-client relationship *ever existed* between either Defendant and Plaintiffs. Plaintiffs claim that an attorney-client relationship existed between Defendants and the bankruptcy estate. That

may be true, but as noted above, the bankruptcy estate and its interests are wholly distinct from those of the individual debtor.

The other "facts" pled by Plaintiffs fail to establish the other elements (for example, Plaintiffs do not assert that Monson's Chapter 7 Bankruptcy was not fully resolved, and Plaintiffs' misrepresentations about Defendant Stermer's deposition testimony is contradicted by the deposition transcript itself), but the Court need not reach these inconsistencies: Plaintiffs have not, and cannot, plead that Defendants were ever their attorneys and this claim therefore fails.

**c. Count III: Attorney Deceit and Collusion**

For this claim, Plaintiffs cite a punitive statute, Minn. Stat. § 481.071, which reads:

> Every attorney or counselor at law who shall be guilty of any deceit or collusion, or shall consent thereto, with intent to deceive the court or any party, or who shall delay the attorney's client's suit with a view to the attorney's own gain, shall be guilty of a misdemeanor and, in addition to the punishment prescribed by law therefor, shall forfeit to the party injured treble damages, to be recovered in a civil action.

*Id*.

Much of this statute is inapplicable on its face. For example, the portion that if a lawyer is found *guilty* of deceit and collision, they are guilty of a misdemeanor, is a criminal statute that Plaintiffs cannot bring; nor is there any allegation that Defendants have ever been found guilty of this (or any other) offense. The portions dealing with an "attorney's client's suit" are also inapplicable—Plaintiffs were never Defendants' client. Even if this statute did apply to Plaintiffs, "a state law claim of attorney deceit must be raised in the proceeding where the deceit allegedly occurred, except in cases where the deceit could not have been discovered at that time." *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d

814, 820 (8th Cir. 2012). Plaintiffs' Bankruptcy Case ran from 2014 through half of 2026 (albeit subject to some periods of closure before reopening). Plaintiffs cite no reason why this claim could not have been brought in the bankruptcy case at any time *in the last twelve years*.

Plaintiffs lack standing to assert this claim for the reasons cited above, and even if they possessed standing, the claim should have been brought in the Bankruptcy Case. This claim is improperly before this Court and must be dismissed.

**d. Count IV: Fraud on the Court**

The elements of a fraud-on-the-court claim are "[1] an intentional course of material misrepresentation or non-disclosure, [2] having the result of misleading the court and opposing counsel and [3] making the property settlement grossly unfair." *Maranda v. Maranda*, 449 N.W.2d 158, 165 (Minn. 1989). Plaintiffs fail to plead all of the elements of this claim—the Complaint contains no allegations that Defendants mislead opposing counsel, nor does it allege that the result of the Bankruptcy Case was "grossly unfair"[5]—and even if they had, in general, fraud on the court is not an independent cause of action available to a plaintiff. As the District Court in Minnesota has explained:

> neither Great Gulf nor the Court has been able to identify a single case in which a court allowed a plaintiff to obtain damages for fraud where the defendant allegedly misled a *court* but did not mislead the *plaintiff.* To the contrary, courts have repeatedly held that "fraud on the court is not an independent cause of action." *Hirsi v. ARCH Language Network, Inc.*, No. A18-1076, 2019 WL 1591800, at *9 (Minn. Ct. App. Apr. 15, 2019); *Bajwa v. Bailey*, No. A14-0055, 2014 WL 3558447 (Minn.

[5] Defendants reiterate Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud or mistake must *state with particularity* the applicable circumstances. Plaintiffs fail to even plead the black letter law elements of this claim, let alone the heightened standard required by the rule.

> Ct. App. July 21, 2014); *see also Chewning v. Ford Motor Co.*, 35 F. Supp. 2d 487, 491 (D.S.C. 1998); *Lyons v. Ticer Greene*, No. 5:21-CV-00010, 2022 WL 2532460, at *5 (W.D. Va. July 7, 2022); ***850** *Ortega v. Young Again Prod., Inc.*, No. CIV. A. H-12-0001, 2012 WL 3046116, at *4 (S.D. Tex. July 25, 2012). As these courts have explained, the remedy for fraud on a court is to inform the court of the fraud and ask the court to vacate the order or judgment that was entered in reliance on the fraud.

*Great Gulf Corp. v. Graham*, 654 F. Supp. 3d 838, 849–50 (D. Minn. 2023).

Thus, even if such fraud *were* correctly pled, and even if Plaintiffs somehow had standing to maintain the claim (and neither of these things is true), "the remedy for fraud on a court is to inform the court of the fraud and ask the court to vacate the order or judgment that was entered in reliance on the fraud." *Id*. And *even then*, such "relief is only available where it would be 'manifestly unconscionable' to allow the judgment to stand….Relief through an independent equitable action alleging fraud on the court, then, is a truly extraordinary form of relief." *Superior Seafoods, Inc. v. Tyson Foods, Inc.*, 620 F.3d 873, 878 (8th Cir. 2010).

This is not an extraordinary case that requires extraordinary relief. If Plaintiffs were aggrieved by developments in the Bankruptcy Case, such to the point they believe the final distribution in that case was "manifestly unconscionable" (and to be clear, Plaintiffs have not pled this) any hypothetical relief Plaintiffs believe they are entitled to lies in the Bankruptcy Case, not this one. This claim must also be dismissed.

**e. Intentional Infliction of Emotional Distress.**

Finally, Plaintiffs claim that Monson "suffered intense mental suffering, severe emotional distress, extreme humiliation and prolonged psychological suffering" due to

"Defendants' (alleged) conduct in privately working with an adverse creditor to plaintiffs' detriment…" Compl. at 7.

To recover for the tort of intentional infliction of emotional distress, a plaintiff must show that "(1) the conduct allegedly causing the distress was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress was severe." *Hempel v. Fairview Hosps. & Healthcare Servs., Inc.*, 504 N.W.2d 487, 492 (Minn. Ct. App. 1993). "To qualify as extreme or outrageous, the conduct must be 'so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community.'" *Id*. Even actions conducted with malice are not sufficient themselves to meet this burden. *Strauss v. Thorne*, 490 N.W.2d 908, 913 (Minn. Ct. App. 1992).

Construing Plaintiffs' Complaint exceptionally and impermissibly broadly, Plaintiffs allege that Defendants defrauded them through the bankruptcy proceeding and that caused Monson severe emotional distress. But activities like defrauding another person—while undoubtedly wrong and troubling to the receiving party—are not the sort of "extreme or outrageous" conduct that are "atrocious" enough to justify such a claim. *See e.g. Baker v. CitiMortgage, Inc.*, No. CV 16-1103(DSD/JSM), 2016 WL 4697334, at *4 (D. Minn. Sept. 7, 2016); *Smith v. Am. Invs. Network*, No. CIV.05-1686(JRT/FLN), 2006 WL 3491144, at *12 (D. Minn. Oct. 26, 2006), *report and recommendation adopted*, No. CIV 05-1686 JRT/FLN, 2006 WL 3490964 (D. Minn. Dec. 4, 2006); *Oberg v. Shapiro*, No. 15-CV-3678 (PJS/SER), 2016 WL 4501354, at *9 (D. Minn. Aug. 1, 2016), *report and recommendation adopted*, No. 15-CV-3678 (PJS/SER), 2016 WL 4497754 (D. Minn. Aug.

26, 2016); *Wittkowski v. PNC Mortg.*, No. CIV. 11-1602, 2011 WL 5838517, at *5 (D. Minn. Nov. 18, 2011).

And while physical symptoms do not necessarily need to be pled to maintain a claim for intentional infliction of emotional distress, the severity of the distress alleged must be heightened beyond what a reasonable person could bear. As noted in *Mashak v. Minnesota*, No. CIV. 11-473 JRT/JSM, 2012 WL 928225, at *19 (D. Minn. Jan. 25, 2012), *report and recommendation adopted*, No. CIV. 11-473 JRT/JSM, 2012 WL 928251 (D. Minn. Mar. 19, 2012),

> *Besett v. Wadena County,* Civ. No. 10–934 (JRT/LIB), 2010 WL 5439720 at *17 (D. Minn. Dec. 7, 2010) gather(s) cases rejecting depression, a fear of answering door or telephone, impaired ability to trust, damaged relationships with children, vomiting, skin rashes, stomach disorders, high blood pressure, crying spells, avoidance of social interaction humiliation, embarrassment, insomnia, difficulty sleeping, anxiety, lightheadedness, and shortness of breath as sufficient to support a claim for intentional infliction of emotional distress…

*Id*.

Plaintiffs have not met the pleading requirements for this claim, which therefore must also be dismissed for failure to state a claim.

## CONCLUSION

Defendants respectfully request that the Court grant their Motion to Dismiss for the reasons stated above. Plaintiffs lack standing to sue and the Complaint must be dismissed in its entirety for failure to state a claim upon which relief can be granted.

Dated: September 16, 2026

LIND, JENSEN, SULLIVAN & PETERSON
A PROFESSIONAL ASSOCIATION

*/s/ Matthew D. Sloneker*

Matthew D. Sloneker, I.D. No. 338953
Franklin I. Rosenberg, I.D. No. 0400225
Attorneys for Defendants
901 Marquette Avenue, Suite 1900
Minneapolis, MN 55402
612-333-3637
Matt.sloneker@lindjensen.com
Franklin.rosenberg@lindjensen.com