UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Chad Lee Monson and
71 Aggregate, Inc.,

Plaintiffs,

vs.

J. Richard Stermer and
Stermer & Sellner, Chtd.,

Defendants.

Court File No.: 26-CV-3632-NEB-EMB

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS FIRST AMENDED COMPLAINT IN LIEU OF AN ANSWER**

## INTRODUCTION

Defendants J. Richard Stermer and Stermer & Sellner, Chtd. submit this reply memorandum of law in support of their Motion to Dismiss Plaintiffs' First Amended Complaint in Lieu of an Answer. Plaintiffs have asserted three claims against Defendants: a criminal attorney misconduct statute they have no authority to bring; intentional breach of fiduciary duty to parties (Plaintiffs) to whom Defendants never owed a fiduciary duty; and vague conspiracies of fraud and/or concealment that would be insufficient to survive even the generic pleading standard, let alone the heightened requirement for fraud claims.

Plaintiffs' opposition memorandum ignores black letter law on pleadings, bankruptcy procedure, and how criminal charges work and asks the Court to instead accept not the facts as pled, but the facts *as Plaintiffs want them to be construed*, despite *already* amending their Complaint during the pendency of Defendants' motion. Defendants will

attempt to respond to Plaintiffs' assertions in the order that they are presented. Ultimately, Plaintiffs provide nothing of substance and this case must still be dismissed with prejudice.

## **FACTS**

The underlying facts of the case are as summarized and cited in Defendants' initial memorandum and the Affidavit of Matthew Sloneker. A full recitation of those facts is omitted for brevity purposes (except at various points *infra* where Plaintiffs ask the Court to ignore the facts *asserted in their Amended Complaint* to try to salvage their case). However, Defendants note here that Plaintiffs have already amended their Complaint once in response to Defendants' first motion to dismiss. Even Plaintiffs' Amended Complaint fails to allege specific actions taken by Defendants, or how they allegedly took those actions. Like the original Complaint, the Amended Complaint simply claims a vague set of misdeeds by Defendants during some portion of a multiyear bankruptcy proceeding without any additional details. Even on their second bite at the apple, Plaintiffs still fail to state with any specificity exactly what Defendants supposedly did to them and/or their property; indeed, Plaintiffs fail to even identify *what* property of theirs was allegedly damaged, taken, etc. by Defendants.

The Court should deny Plaintiffs' request to amend their Complaint *yet again* to try to manufacture new facts and grounds to avoid dismissal.

## **LEGAL STANDARD**

While Plaintiffs correctly cite to pieces of the correct pleading standard, they fail to recognize that there is a difference between construing factual inferences in a party's favor and accepting that party's opinions in a memorandum on what the facts show. Of course,

absolute specificity is not required in a complaint—no party argues that it is—but there must be something more than mere speculative entitlement to relief. *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020). It bears repeating that in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation....A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement…" *Id.*

But this is all that Plaintiffs present, even in the second version of their Complaint. Plaintiffs cite an unreported District of South Dakota case, *Lau v. Fink*, 2025 U.S. Dist. LEXIS 21546, 12, for the premise that "The Court ordinarily confines its analysis to the complaint, documents incorporated into or necessarily embraced by it, and matters properly subject to judicial notice." While that holding is not binding on this Court, Defendants agree that the Court can—and should—not only consider the roughly 100 pages of attachments to Plaintiffs' Amended Complaint, but also the documents attached to the Sloneker Affidavit (many of which, like the Stermer Deposition Transcript, are specifically cited in the Amended Complaint), and that the Court should take judicial notice of the Bankruptcy Case and all decisions issued by the judge(s) in that case.

Plaintiffs then cite *Stufflebeam v. Harris*, 521 F.3d 884, 886 (8th Cir. 2008) for their apparent request that the Court *not* follow the law cited in the preceding paragraph (i.e., look only at Plaintiffs' attachments but not the transcript that the pleading references and—

certainly—that the Court not take judicial notice of the Bankruptcy Case), but their reliance on that case is puzzling, because in *Stufflebeam*, additional documents like a police report and criminal citation were attached to or otherwise referenced by the Amended Complaint. Plaintiffs made the decision to cite part of Mr. Stermer's transcript in the Amended Complaint, they cannot (but apparently do) now ask that the Court consider *only the snippet they cut out of it*.

Plaintiffs' final citation in this section, *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006), is similarly puzzling, because while Plaintiffs are correct that "claims sounding in fraud" must plead more specificity above the usual pleading standard, that same case also explained that a pleading containing fraud allegations "requires more than such conclusory and generalized allegations," and in fact held that a fraud claim was correctly dismissed when a plaintiff pled "vague schemes" and patterns of fraud without concretely identifying them. *Id.*

All this is fatal to Plaintiffs' Amended Complaint, which is littered with vague terms like "intentional (detrimental) acts" or "unlawful schemes" (Am. Compl. at 2 and 6) without pleading *what those acts and/or schemes were*. Even with the benefit of Defendants' initial motion papers and memorandum, Plaintiffs still cannot meet the generic pleading standard in their Amended Complaint, to say nothing of the heightened requirement for assertions of fraud. As explained in greater detail below, the Court should not grant Plaintiffs yet another attempt to salvage their critically deficient pleadings.

## ARGUMENT

### A. The *Barton* Doctrine Requires Dismissal of This Case.

As explained extensively by Defendants in their initial memorandum, the "Barton Doctrine," first stated in *Barton v. Barbour,* 104 U.S. 126, 26 L.Ed. 672 (1881) applies here. The *Barton* court "established that an equity receiver could not be sued without leave of the court that appointed him." *Id.* at 128–29. This is a jurisdictional, standing issue that requires dismissal if not met.

Plaintiffs cannot get around this barrier. First, Plaintiffs tried to argue (in their pleadings, no less) that "The (*Barton*) Doctrine does not protect a trustee for intentional torts (or) bad faith..." Am. Compl. at 3. And as noted in Defendants' initial memorandum, that contention is plainly incorrect. Plaintiffs try to repackage their bad faith claims by stating that they plead more than an *improper motive* by Defendants, they allege *improper actions* by Defendants. Opp. Mem. at 4. Detailed legal analysis is not required to disprove this contention.[1]

Grasping at straws, Plaintiffs now try to extend one of the only exceptions to the *Barton* Doctrine—the ultra vires exception—to salvage their case. Both sets of briefing cite to *Satterfield v. Malloy*, 700 F.3d 1231, 1236 (10th Cir. 2012), which discusses the

---

[1] "The *Barton* doctrine exists to ensure other courts do not intervene in the bankruptcy court's administration of an estate without permission. A holding that (a trustee) acted ultra vires *simply because he allegedly discharged his duties as trustee with improper motives would severely undermine this important judicial goal.*"

*Satterfield*, 700 F.3d 1237 (10th Cir. 2012) (emphasis added).

ultra vires exception to the *Barton* Doctrine. It is most "commonly relied upon the exception when a trustee wrongfully seizes possession of a third party's assets." *Id*. at 1235. This completely bars Plaintiff Monson's claims, as there is no doubt that he was undergoing bankruptcy and that his assets were subject to the bankruptcy trustee's (originally Mr. Stermer) authority, subject to approval of the Bankruptcy Judge.

Plaintiffs try to overcome this law by claiming that "the property seized was the property of plaintiff [sic] 71 Aggregate, which was not a party to the bankruptcy proceeding, so the exception, however narrow, applies. The property taken was not estate property." Opp. Mem. at 3. Not only is this a direct admission that—at the least—Plaintiff Monson has no ability to sue Defendants in their individual capacity, but Paragraph 1 of the "Parties" section of the Amended Complaint states clearly that "He (Monson) is the sole owner and operator of 71 Aggregate, Inc." Am. Compl. at 3. It is not even clear when 71 Aggregate was formed (it might have been after Stermer's discharge as trustee), but assuming that the company existed at the time of Plaintiff Monson's bankruptcy, Monson pleads no facts as to why the company that he was *the sole owner and operator* of was not the subject of the bankruptcy case; what property belonged to that company but not to Monson; what company property was "seized" or otherwise taken by Defendants, and numerous other deficiencies. While factual inferences must be construed in Plaintiffs' favor, Plaintiffs are bound by the facts they themselves have pled.

And *even if* Plaintiffs' arguments here reflected the facts as pled, and they do not, and *even if* alleged bad faith was sufficient to apply the ultra vires exception, and it is not,

*Satterfield still* illustrates why the ultra vires exception does not apply to this case. Citing an Eleventh Circuit decision,[2] *Satterfield*

> held that a suit by the debtor was barred because the "essence of [plaintiff's] complaint is that the Trustee and other defendants colluded to enforce ... an order of the bankruptcy court, and otherwise unlawfully attempted to bring assets into the bankruptcy estate" and thus the claims were "related to" the bankruptcy proceeding.

*Satterfield v. Malloy*, 700 F.3d 1231, 1235 (10th Cir. 2012).

Defendants reincorporate a District of Minnesota decision cited in their initial memorandum that amply dispenses with Plaintiffs' contentions:

> Defendants' immunity does not depend on whether the disputed assets were properly included in the bankruptcy estate. Rather, it depends upon whether defendants were performing functions associated with the administration of the bankruptcy estate. As discussed above, collecting and liquidating assets are essential functions of administering the estate. Therefore, defendants are immune from suit as a matter of law, and plaintiffs' Complaint against them must be dismissed.

*Lingenfelter v. Stoebner*, No. 03-CV-5544 (JMR/FLN), 2005 WL 1225950, at *4 (D. Minn. May 23, 2005), *aff'd*, 188 F. App'x 554 (8th Cir. 2006). Defendants were undisputably performing functions associated with administering the bankruptcy estate; Plaintiffs allege that they did so improperly, self-dealt, colluded, etc.—but these were *within* Defendants' duties as bankruptcy trustees.

---

[2] *Lawrence v. Goldberg,* 573 F.3d 1265 (11th Cir. 2009).

The ultra vires exception does not apply,[3] and Plaintiffs are barred from bringing this case. Perhaps Plaintiffs are correct that "At most, Barton [sic] could support dismissal without prejudice…" Opp. Mem. at 4. But all three of Plaintiffs' claims directly relate to alleged malfeasance by Defendants during their tenure as bankruptcy trustees, and alleged bad faith actions, torts, etc. by a trustee simply do not exempt a case from *Barton's* contemplation, no matter how much Plaintiffs wish that it might.

**B. Defendants Have Established Claim Preclusion.**

Here too, Plaintiffs' arguments ignore the law and miss the point. After correctly citing a Fourth Circuit opinion on the requirements of claim preclusion,[4] Plaintiffs state that "The defense therefore requires more than a showing that the present dispute has some connection to a prior bankruptcy." Opp. Mem. at 4. That is true; but it was Plaintiffs, not Defendants, who included the word "bankruptcy" several dozen times in the Amended Complaint. Plaintiffs' own pleadings demonstrate how interwoven the cases are.

Plaintiffs also deceptively state that "Defendants have not identified a final order adjudicating Plaintiffs' present claims. Instead, they rely broadly on the bankruptcy case's

---

[3] Even if it did, in cases where the trustee's acted *ultra vires* in "the wrongful physical seizure and continued possession of property that was not an asset of the bankruptcy estate…that the proper course of action would have been for the trustee to go to court and obtain a turnover order directing the delivery of the property that was an asset of the bankruptcy estate." *In re McKenzie*, 716 F.3d 404, 415 (6th Cir. 2013).

[4] *Keith v. Aldridge*, 900 F.2d 736, 737 (4th Cir. 1990), a case which, like most of Plaintiffs' case law, actually supports Defendants' motion; the *Keith* court affirmed dismissal based on claim preclusion when the same underlying matter had already been determined.

administration, distributions, closure, and Stermer's discharge." Opp. Mem. at 4. Of course, Plaintiffs cite no case law for these arguments.

It is true that Defendants can rely on (and the Court can take judicial notice of) the entirety of the Bankruptcy Case's *twelve-year history*. But Plaintiffs ignore an obvious premise in Defendants' initial briefing that is recited here: "Res judicata applies equally to claims actually litigated and to claims that could have been litigated in the earlier action." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1152 (8th Cir. 2012). Indeed, as Defendants previously noted:

> Under res judicata, a party is 'required to assert all alternative theories of recovery in the initial action…' Consequently, res judicata bars (a party's) claims in this case 'arising from the original circumstances' but 'under new legal theories.'

*Id*. at 1153–54.

The Bankruptcy Judge did not have to decide *every possible* hypothetical claim or scenario for res judicata to apply, but Plaintiffs were obligated to bring any claims *stemming from* the underlying matter—the Bankruptcy Case—there, not wait for the case to close then seek relief from a different Court.

Here again, Plaintiffs try the same tactic as with the preceding section, claiming that "Defendants concede that 71 Aggregate, Inc. was not a named party in the bankruptcy case, but argue that it must be Monson's privy because Monson is alleged to be its sole owner and operator." Opp. Mem. at 4. But *Plaintiffs* said that, not Defendants. Am. Compl. at 3. And even if the Court were to entertain Plaintiffs' linguistic gymnastics here, it would make no difference to the analysis, because Plaintiffs still allege that all improper activity

by Defendants happened in the Bankruptcy Case. It thus necessarily relates to facts and circumstances underlying, and ultimately adjudicated in, *that* case. Plaintiffs can appeal a bankruptcy judge's orders or move to amend findings, but they do not get to forum shop when they want to try their luck with a different Court.

**C. Plaintiffs Cannot Plead Attorney Deceit and Collusion.**

Plaintiffs begin this section with the statement that "Defendants argue that section 481.071 creates only a criminal offense and that Plaintiffs cannot seek civil relief without a prior misdemeanor conviction." Opp. Mem. at 5. That is not the argument. The statute *is* a criminal one, albeit with a civil penalty attached to it.

Plaintiffs misread *Handeen v. Lemaire,* 112 F.3d 1339, 1355 (8th Cir.1997), which was a civil Racketeer Influenced and Corrupt Organizations ("RICO") case where specific conduct (i.e., falsifying promissory notes and detailed fraudulent transactions) not alleged in this case led the *Handeen* court to determine whether the plaintiff stated a claim under Minnesota common law authorized the claim; *Handeen* did not actually make that determination. Further:

> these statutes create penalties, not independent causes of action. *Handeen v. Lemaire,* 112 F.3d 1339, 1355 (8th Cir.1997) (approving of district court's reasoning that the two statutes "merely authorize treble damages in certain civil suits and do not create independent grounds for relief"); *Love v. Anderson,* 240 Minn. 312, 61 N.W.2d 419, 422 (1953) (noting that section 481.07 "deals with penalties for deceit or collusion. It does not create a new cause of action. The common law gives the right of action and the statute the penalty.")

*Ness v. Gurstel Chargo, P.A.*, 933 F. Supp. 2d 1156, 1172 (D. Minn. 2013).

And notably, Plaintiffs did not plead common law attorney deceit. Plaintiffs' count is entitled "COUNT I: STATUTORY DECEIT AND COLLUSION," and extensively cites the statute discussed *supra*. Plaintiffs cannot now, on their second "bite at the apple," ask the Court to retroactively assume that Plaintiffs *meant* to plead a common law offense despite *entitling* this claim as one per the statute.

Finally, Plaintiffs' opinion that "the timing and discoverability of the alleged concealment are factual matters that should not be resolved" here. Opp. Mem. at 5. But here again, Plaintiffs overlook their own pleadings—the attachments (which Plaintiffs alternatively urge the Court to consider or not consider, depending on where we are in the opposition memorandum) indicate that Plaintiffs "knew" of Stermer's alleged fraud—and were attempting to litigate it in the Bankruptcy Case—in 2023.[5] *See* Am. Compl. Ex. D. This is not, as Plaintiffs disingenuously claim, "adopting Defendants' interpretation of the allegations" (Opp. Mem. at 5), this is taking Plaintiffs at their word and considering the voluminous set of documents that they have bootstrapped into their Amended Complaint.

Plaintiffs' Amended Complaint soundly fails on this claim, too, and must be dismissed.

### D. Count II Fails to State A Claim for Intentional Breach of Fiduciary Duty.

Defendants never owed a fiduciary duty to Plaintiffs. Plaintiffs' "argument" on this Count contains *no case law* or other authority in support of their position. Not a single

[5] Not to mention that *Plaintiffs themselves* concede that they "discovered" the "fraud" on February 1, 2023. Opp. Mem. at 6.

citation. Plaintiffs' own opinions on what theories are being asserted are irrelevant. Plaintiffs did not—and cannot—plead that they have standing to bring this claim, because Defendants never owed them a fiduciary duty. In the absence of any case law from Plaintiffs, Defendants direct the Court to the corresponding section of their initial memorandum for the (ample) authority why Plaintiffs cannot maintain this claim.

**E. Count III Fails to Adequately Plead Fraud/Concealment.**

Plaintiffs' arguments here are somewhat hard to follow. Plaintiffs are correct that Rule 9(b) requires details beyond the threshold pleading standard, then claim that the purpose of the rule is to give a defendant "sufficiently specific notice to respond promptly to the allegations." Opp. Mem. at 6. Generally speaking, that is true. But Plaintiffs then apparently argue that because Defendants timely moved to dismiss Plaintiffs' Amended Complaint, that means that the insufficiency of Plaintiffs' pled facts should be ignored.

It shouldn't be. Plaintiffs argue that because they cite part of a deposition of Defendant Stermer, that document alone (which Plaintiffs alternatively ask the Court to consider, or not consider) shows that Plaintiffs pled sufficient particularity to maintain this claim. But on its face, as indicated in prior briefing, the deposition shows nothing about fraudulent behavior, representations, etc. There is no specificity to Defendants' claims at all. Plaintiffs simply plead a murky set of nefarious activities by Defendants at unspecified times for unspecified amounts over the course of a *twelve-year-long* bankruptcy case, then claim that because of testimony about a prior, unrelated representation by one the Defendants, Plaintiffs have somehow met the Rule 9(b) standard.

As is thematic throughout Plaintiffs' briefing, their own case law supports Defendants' position:

> To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result.

*U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). Very simply, Plaintiffs have not done this, and their opinions to the contrary are no substitute for the deficiencies in their own pleadings.

**F. Plaintiffs Should Not Receive Leave to Amend.**

As if Plaintiffs' Amended Complaint did not explicitly violate the *Barton* Doctrine, fall short of Rules 9(b) and 12, and misstate other applicable law, Plaintiffs outrageously ask the Court for a *third swing* at Defendants. Plaintiffs' first Complaint fell short on numerous legal grounds, and they filed the Amended version shortly after Defendants' initial motion to dismiss.

As the Court is aware, a party may amend their pleading once as a matter of course. Fed. R. Civ. P. 15(a)(1). Plaintiffs have already done so. While the Federal Rules of Civil Procedure do allow for some liberality in amending of pleadings, "parties do not have an absolute right to amend their pleadings, even under this liberal standard." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). The decision whether to allow a party to amend a pleading again is left to the court's discretion. *Id.* at 714.

Now, Plaintiffs want the Court to use that discretion to allow them to continue their gamesmanship: allege frivolous claims seeking millions of dollars, wait for Defendants to

state their legal arguments for dismissal via motion practice, then repackage and reword the facts to try to sneak around Defendants' cited countervailing authority. But it is not just Plaintiffs' *wording* of the facts that is insufficient, it is the facts themselves. Plaintiffs cannot (as they do throughout their Opposition Memorandum) ask the Court to consider certain pled facts and documents for one claim, then disregard them when convenient elsewhere. Plaintiffs' Amended Complaint attaches roughly 100 pages of documents, and includes portions of others. At the motion to dismiss stage, the Court "can consider documents 'necessarily embraced by the complaint,' including 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'" *Rossi v. Arch Ins. Co.*, 60 F.4th 1189, 1193 (8th Cir. 2023). And if the contents of those documents overtly contradict other portions of a plaintiff's pleading, then dismissal is proper. *See e.g., Meardon v. Reg.*, 994 F.3d 927, 935 (8th Cir. 2021).

These documents—and the language of the Amended Complaint itself—demonstrate that there is simply no reason why Plaintiffs' grievances about developments in the Bankruptcy Case cannot and should not be litigated there. No matter how many times Plaintiffs reword their pleadings, they still allege malfeasance and impropriety by Defendants *in the Bankruptcy Case* in Defendants' role as trustee. That triggers the *Barton* Doctrine, and Plaintiffs' repeated insertion of the phrase "ultra vires" fails to exempt the case from the Bankruptcy Court's jurisdiction. Plaintiffs' Amended Complaint fails on numerous other grounds too, discussed above, and none of which justify allowing them a

second amendment in as many months to try to keep their flailing claims against Defendants alive.

The Court should also disregard Plaintiffs' "Prayer for Relief" on Page 7 of their Opposition Memorandum. Plaintiffs do not get to do that in responsive briefing. They have already "prayed" relief in their pleadings twice, and it is those pleadings—deficient as they are—that are the subject of this motion.

## CONCLUSION

Defendants respectfully request that the Court grant their Motion to Dismiss the First Amended Complaint for the reasons stated above. Plaintiffs' opposition memorandum contains no authority to remove this case from *Barton's* scope, but even if it did, Plaintiffs still fail to state a claim for relief, and the issue of their bankruptcy has already been decided by that presiding court. The Court should further deny Plaintiffs' request to amend their pleadings yet again and dismiss this case.

Dated: October 29, 2026

LIND, JENSEN, SULLIVAN & PETERSON
A PROFESSIONAL ASSOCIATION

*s/Franklin I. Rosenberg*

Matthew D. Sloneker, I.D. No. 338953
Franklin I. Rosenberg, I.D. No. 0400225
Attorneys for Defendants
901 Marquette Avenue, Suite 1900
Minneapolis, MN 55402
612-333-3637
Matt.sloneker@lindjensen.com
Franklin.rosenberg@lindjensen.com